IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENNY T. SOUTHARD, #S00819, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-00839-JPG |
| ) | |
| WEXFORD MEDICAL, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter comes before the Court for consideration of the Second Motion for Summary Judgment on the Merits filed by Wexford Health Sources, Inc. (improperly named "Wexford Medical").[1] (Doc. 113). For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

### PROCEDURAL HISTORY

Plaintiff Benny Southard (Inmate No. S00819) filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights that occurred in connection with an attack on him by another inmate at Pinckneyville Correctional Center ("Pinckneyville") in July 2015 which fractured his nose. Plaintiff alleges that Wexford Health Sources, Inc. ("Wexford"), through its "Medical Board," denied three separate requests from Pinckneyville medical staff for a referral to an ear, nose, and throat ("ENT") specialist. Plaintiff was released from prison on September 17, 2015 without receiving any referral to an outside doctor.

---

[1] The Clerk of Court will be directed to substitute Wexford Health Sources, Inc. in place of Wexford Medical as the Defendant in CM/ECF.

Following his release, Plaintiff sought medical treatment on his own and underwent plastic surgery to repair his injuries. He was then reincarcerated at Graham Correctional Center ("Graham") where he grieved the denial of follow-up treatment in 2017.

The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and recognized four claims: (1) **Count 1** - an Eighth Amendment claim against Wexford for deliberate indifference to Plaintiff's need for treatment and specialist care for his injured face and nose; (2) **Count 2** – an Eighth Amendment claim against Dr. Shaw[2] for deliberate indifference to Plaintiff's need for treatment and specialist care for his injured face and nose; (3) **Count 3** – an Eighth Amendment claim against the Illinois Department of Corrections and Pinckneyville for deliberate indifference to Plaintiff's need for treatment and specialist care for his injured face and nose; and (4) **Count 4** – Illinois state law claim for medical negligence against Dr. Shaw and Wexford for delaying and denying treatment for Plaintiff's injured face and nose. (Doc. 6). The Court allowed Plaintiff to proceed with Count 1 against Wexford and Count 2 against Dr. Shaw. However, Count 3 against the IDOC and Pinckneyville was dismissed with prejudice, and Count 4 against Dr. Shaw and Wexford was dismissed without prejudice. *Id*.

Following discovery, Defendants Wexford and Shah filed a Motion for Partial Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 37). Defendants argued that Plaintiff's grievances expanded the scope of his claims in Counts 1 and 2 from Pinckneyville in 2015 to include his reincarceration at Graham in 2017. *Id*. Plaintiff responded by clarifying that his claims stem from his incarceration at Pinckneyville in 2015. (Doc. 46). Finding no objections, the Court granted Defendants' Partial Summary Judgment Motion, narrowing his claims to the Defendants' actions in 2015. (Doc. 62). The Court then granted a Motion for Summary Judgment

---

[2] It was later determined that "Dr. Shaw" is actually Dr. Vipin Shah. (Docs. 37, 71).

2

on the Merits filed by Dr. Shah, resulting in the dismissal of Count 2 with prejudice against the doctor. (Doc. 88).

The only claim that remains in this action is the Eighth Amendment claim in Count 1 against Wexford for deliberate indifference to Plaintiff's need for treatment and specialist care for his injured face and nose at Pinckneyville in 2015. Wexford filed a Second Motion for Summary Judgment on the Merits of Count 1 on March 11, 2020. (Doc. 113). Wexford relies primarily on Plaintiff's deposition (Doc. 114-1), Affidavit of Dr. Vipin Shah (Doc. 114-2), Plaintiff's Medical Records (Doc. 114-3), Affidavit of Dr. Stephen Ritz (Doc. 114-4), and the deposition of Dr. Mailey, the surgeon who performed Plaintiff's surgery (Doc. 114-5). Plaintiff filed a response in opposition to the motion on May 26, 2020. (Doc. 126). He admitted that the facts of this case are largely undisputed but argues that the facts and law still preclude summary judgment. *Id*. Defendants filed a reply on June 9, 2020. (Doc. 128).

## FINDINGS OF FACT

**A.   The Parties**

Plaintiff Benny Southard is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and was housed at Pinckneyville at all relevant times. (Doc. 114-1, p. 4).

Defendant Wexford Health Sources, Inc. is a private medical corporation responsible for providing medical services to IDOC inmates, including inmates at Pinckneyville. (Doc. 114-4). Dr. Vipin Shah is a medical doctor employed by Wexford at Pinckneyville at the time of Plaintiff's injury. (Doc. 114-2). When Plaintiff sought treatment at Pinckneyville, Wexford had in place policies establishing a Utilization Management ("UM") program. (Doc. 114-4, pp. 2-3; Doc. 127). Dr. Stephen Ritz is Wexford's Corporate Utilization Management Medical Director and held that position at all relevant times. (Doc. 114-4). If a patient required an off-site medical consultation

or specialized on-site/off-site medical testing, the case was presented at a Wexford Collegial Review. Collegial review conference calls between the onsite physician and a utilization management physician occurred weekly at Pinckneyville in 2015. (Doc. 114-2, p. 2). During the conference calls, the UM physician and site physician discussed the patient over the telephone to arrive at an appropriate plan of care. (Docs. 114-2, 114-4). If a special service was needed and approved, the site would schedule the appointment or otherwise arrange for delivery of the special service. *Id*. If the off-site service was not approved, then an alternative treatment plan was developed. *Id*. The process was memorialized in the record and placed in the inmate's chart. *Id*. If the referral request was not agreed to by the UM physician in collegial review, the referral request was stamped "Non-Approved" and a *Non-Approval/Appeal Form* was faxed to the site. *Id*. Non-approval could be appealed. *Id*.

The site Medical Director was responsible for reviewing the non-approval referral request and, as appropriate, identifying any additional clinical findings and documentation to support the referral request. (Docs. 114-2, 114-4). The Medical Director would then update the *Non-Approval/Appeal For*m and fax it with supporting documentation to the UM Department. *Id*. The original physician from the UM Department would reconsider the appeal and fax the decision back to the site. *Id*. If the original non-approval was upheld, the Site Medical Director could request a second appeal of the determination to be reviewed by a different physician other than the original reviewer. *Id*. If necessary, an appeal could go to a third level of appeal involving the IDOC Agency Medical Director, who had final decision authority for the care of all inmates. *Id*.

Inmates could be referred for emergency off-site medical care at any time if the Medical Director or designee determined it was clinically necessary. (Docs. 114-2, 114-4).

**B.      Plaintiff's Medical Care**

On or around July 26, 2015, Plaintiff's nose was injured when another inmate punched him in the face during a dispute. (Doc. 114-1, pp. 6, 9). On July 27, 2015, Plaintiff sought medical attention for the nasal injury. (Plaintiff's Medical Records, Doc. 114-3, p. 7). He was seen by a nurse practitioner who noted an "obvious deviation to nose" and ordered x-rays of the nasal bones. *Id*. X-rays of Plaintiff's nose were taken on the same date. (Doc. 114-3, p. 8).

On July 31, 2015, Dr. Shah submitted a Medical Special Services Referral and Report requesting an ENT referral based on his review of the x-ray results. (Doc. 114-3, p. 26). Shah noted a nasal fracture and breathing difficulty. *Id*. On August 1, 2015, Plaintiff was seen by a nurse during a sick call visit and reported sinus pressure in his nasal cavity and headaches. *Id*. at p. 11. The nurse provided allergy medication and acetaminophen to relieve sinus pressure. *Id*. at pp. 11-12. On August 3, 2015, Shah completed a collegial review conference with Wexford Utilization Management Physician Dr. Stephen Ritz regarding the ENT referral request. *Id*. at pp. 13, 27. Since the x-ray showed a minimal fracture and Plaintiff's naval cavities were both open and able to function, it was determined an ENT consultation was not medically necessary at that time. (Doc. 114-2, p. 4; Doc. 114-4, p. 5. An Alternative Treatment Plan to monitor on site for complications was developed. *Id*. Shah requested Plaintiff be placed on the MD call line for follow up. (Doc. 114-2, p. 4; Doc. 114-3, p. 13).

On August 4, 2015, Plaintiff reported to nurse sick call related to nasal complaints and stated that the acetaminophen "won't help." (Doc. 114-3, p. 15). On August 10, 2015, Shah saw Plaintiff for a follow-up visit and objectively noted Plaintiff's nose was deformed with slight inclination on anterior surface with an open septum in middle, and that Plaintiff was breathing okay. *Id*. at p. 16. Shah provided Plaintiff a prescription for one month of allergy medication and

one month of Afrin nasal spray to take twice per day to treat sinus pressure. *Id*. On that date, Shah also completed the *Medical Special Service Referral Denial or Revision* form, documenting the denial of the referral during the August 3, 2015 collegial review. *Id*. at p. 17.

On August 18, 2015, HCU Administrator Christine Brown entered a note in Plaintiff's medical records discussing Plaintiff's nasal injury and status. (Doc. 114-3, p. 17). Brown noted Plaintiff was reporting "I can't breathe," "my nose hurts," and "my left eye is tender all the time." *Id*. Brown made a note of the nasal deformity and developed a plan to "discuss with OHS and Wexford for possible ENT consult to be reconsidered." *Id*.

On August 24, 2015, Shah submitted a second Medical Special Services Referral and Report requesting an ENT referral to appeal the initial non-approval from August 3, 2015. (Doc. 114-3, p. 29). Shah noted the rationale for referral was that post-nasal injury, the x-ray showed an irregularity along the tip of the nasal bone, there was gross deformity, and that at that time Plaintiff was complaining of breathing difficulty on the side of the injury, and mild deviation of the septum. *Id*. Shah submitted additional materials to Ritz to support the appeal. (Doc. 114-2, p. 6).

On August 28, 2015, Dr. Ritz and Dr. Lehman reviewed an appeal filed by Pinckneyville's Director of Nursing and determined the ENT consultation should remain non-approved. (Doc. 114-3, p. 30).

On August 31, 2015, Shah discussed his appeal with Dr. Ritz. *Id*. The request for an ENT consultation remained non-approved because it was determined repair was cosmetic and not medically necessary. *Id*. It was noted that reduction in ability to nasal breathe can be both a short-term and long-term consequence of nasal fracture and may improve as soft tissue swelling subsides. *Id*. It was determined there was no indication for surgical repair. *Id*. Use of nasal saline was approved as an alternative treatment plan. *Id*.

On September 2, 2015, the August 31, 2015, non-approval decision was appealed to a third level of appeal with the IDOC Agency Medical Director Dr. Shicker. (Doc. 114-2, p. 6). On that date, Dr. Shicker overturned the denial and approved the ENT referral request. (Doc. 114-3, p. 37). On September 8, 2015, Pinckneyville staff attempted to schedule Plaintiff's ENT referral. *Id*. at p. 22.[3] The appointment scheduler contacted the Orthopedic Institute of Southern Illinois, the Center for Medical Arts, Springfield Clinic, and approximately six other doctors' offices to attempt to schedule Plaintiff's appointment before his release date. *Id*. The offices contacted did not have any availability prior to Plaintiff's release date. *Id*. Also, on September 8, 2015, Dr. Shah saw Plaintiff in follow up to the nasal fracture complaints and prescribed Afrin nasal spray to use twice per day for one month, 400 mg ibuprofen to take twice per day, and antibiotic Augmentin 875 mg to treat a potential infection. *Id*. at p. 21.

On September 10, 2015, the scheduler contacted additional offices in an attempt to schedule an ENT appointment. *Id*. at pp. 24, 38-41. Plaintiff's release date was set for September 17, 2015. *Id*. Plaintiff was released from Pinckneyville before his ENT appointment could be completed.

Following his release, Plaintiff scheduled an appointment with a doctor regarding his nose. (Doc. 114-1, p. 13). The doctor referred him to a plastic surgeon, Dr. Brian Mailey. *Id*. Dr. Mailey developed a plan for a rib graft and transfer of cartilage to repair his nose. *Id*. The surgery was conducted approximately eight or nine months after Plaintiff's release. *Id*. Plaintiff alleges he still has issues with breathing out of his right nostril because the tissue cannot get a lot of air through it. *Id*. at p. 15. Plaintiff still uses Nasacort nasal spray. *Id*.

Dr. Mailey testified during his deposition that it would have been possible for Plaintiff's

---

[3] Dr. Shah explained that the attempt to schedule an ENT referral was delayed from September 3, 2015, to September 8, 2015 because the scheduler was on vacation. (Doc. 114-2, p. 7).

nasal fracture to be corrected with a "closed reduction" (a "smaller surgery" than what Plaintiff ultimately had) if he had been referred to an ENT or surgeon within the first 6 weeks of the injury. (Doc. 114-5, pp. 9, 20, 22, 24-26). In his opinion, an outside referral was the appropriate next step given Plaintiff's symptoms of nasal deviation, continued bleeding, headaches, and sinus issues, and that with a "severe nasal deviation … almost everyone is going to probably agree on what you need to do which is to fix it or reduce it, so I don't think there's a broad difference in opinion." (Doc. 114-5, pp. 13-14). Dr. Mailey also noted that it is common for an insurance company to deny authorization for specialty treatment for patients with posttraumatic nasal deformities like Plaintiff's for similar reasons to those stated in the collegial review/denial of his ENT referral request. (Doc. 114-5, p. 24).

## LEGAL STANDARDS

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir 1994). Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts

showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836.  If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists.  *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

## DISCUSSION

Plaintiff's claims are governed by the Eighth Amendment, which prohibits cruel and unusual punishment of convicted persons.  *See* U.S. CONST., amend. VIII.  The Eighth Amendment safeguards inmates against pain and suffering that serves no penological purpose.  *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  It obligates prison officials to provide inmates with adequate medical care.  *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

The Court applies a two-part analysis to Eighth Amendment claims of inadequate medical care.  *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005).  First, the Court must determine whether the plaintiff suffered from a sufficiently serious medical condition, from an objective standpoint.  *Id*.  Second, the Court must determine whether each defendant responded with deliberate indifference, from a subjective standpoint.  *Id*.  This analysis requires the Court to evaluate the "totality of an inmate's medical care." *Petties v. Carter*, 836 F.3d 722, 728-29 (7th Cir. 2016).

The parties do not dispute that Plaintiff's nose injury satisfies the first prong of this analysis for summary judgment purposes. The question for the Court, then, is whether the remaining Defendant – Wexford – responded with deliberate indifference to the medical condition.  An individual defendant is deliberately indifferent when s/he knows of a serious risk to the prisoner's

9

health but consciously disregards the risk. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citation omitted). Negligence, gross negligence, or even recklessness does not support an Eighth Amendment claim. *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). The deliberate indifference standard "approaches intentional wrongdoing." *Holloway*, 700 F.3d at 1073. The Court has already determined that Dr. Shah, the only individual Defendant named in Plaintiff's lawsuit, was entitled to summary judgment on the deliberate indifference claim against him. (Doc. 88).

With respect to the claim against Wexford, a private medical corporation acting under color of state law is treated like a municipal entity. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016). It cannot be liable under Section 1983 based on a theory of *respondeat superior* (supervisory) liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Like a municipality, Wexford may only be held liable under Section 1983 for constitutional violations caused by its own policy or custom. Plaintiff may establish a "policy or custom" by pointing to: (a) an express policy that, when enforced, caused a constitutional deprivation; (b) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to amount to a custom or usage that has the force of law; or (c) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See Monell*, 436 U.S. at 690-91; *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 786 (7th Cir. 2014). Plaintiff must also establish that the municipality, through deliberate conduct, was the "moving force" behind the constitutional injury. *Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Wexford argues that the medical professionals in their employ who turned down Dr. Shah's

requests for an ENT referral during collegial review were not deliberately indifferent, but instead relied on their medical judgment that such referral was not medically necessary, and their decisions fell within the bounds of medical professionalism. (Doc. 114, pp. 12-13). Wexford further asserts that its policies and/or practices did not cause a constitutional violation. (Doc. 114, pp. 14-18).

In response to the summary judgment motion, Plaintiff argues that a jury could find Wexford's collegial review decision process to be deliberately indifferent because Wexford was aware of his serious injury, and it can be inferred from this knowledge that Plaintiff faced a substantial risk of harm if he was not timely referred to an ENT specialist – yet the ENT referral was denied for approximately 5 weeks (July 31- September 2, 2015). (Doc. 126, pp. 9-10). Plaintiff's surgeon testified that a specialist referral was medically necessary within 6 weeks of the injury in order for him to undergo a closed reduction of the fracture. That procedure could have avoided the need for the more extensive surgery that was later required. (Doc. 126, pp. 10-11). Finally, Plaintiff asserts there is a factual question as to whether the standard set in Wexford's UM Policies and Procedures was actually met in practice by Wexford, where Wexford's interpretation of its policy caused it to deny Plaintiff a necessary ENT referral on 3 occasions. (Doc. 126, pp. 11-12).[4]

The Seventh Circuit recently ruled that Wexford's collegial review process "is not unconstitutional on its face," thus more evidence is required to support a finding that the collegial review process was the cause of an Eighth Amendment violation. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 651 (7th Cir. 2021) (affirming judgment in favor of Wexford as a matter of law; finding no abuse of discretion for exclusion of evidence of delays in other inmates'

---

[4] While the Complaint (Doc. 1, p. 7) asserted that Wexford deliberately delayed making an ENT referral because Plaintiff's release date was imminent, no evidence has been adduced to support this claim other than Plaintiff's own testimony, and Plaintiff appears to have abandoned the argument. (Doc. 114, pp. 15-20; Doc. 126).

11

cases where affidavits did not demonstrate similar harm arising from the collegial review process). The court noted that it has "not adopted bright-line rules regarding the quantity, quality, or frequency of conduct needed to prove a widespread custom or practice under *Monell*," and noted the difficulties with proof where a bureaucracy "diffuses individual responsibility and accountability," making it problematic to find an individual deliberately indifferent. *Howell*, 987 F.3d at 654-55. In some instances, a prisoner may show *Monell* liability based only on his/her individual experience, but "the more common paths toward *Monell* liability require proof either of an express policy that is unconstitutional or a widespread practice or custom affecting other individuals or showing repeated deliberate indifference toward the plaintiff." *Id.* at 655 (collecting cases).

Here, Plaintiff has not put forth evidence of the existence of an unconstitutional express policy that caused the delay in treatment, and *Howell* establishes that the collegial review process itself is not an unconstitutional policy. Unlike the plaintiff in that case, Plaintiff has not attempted to produce any evidence of a widespread custom or practice on the part of Wexford to delay or deny other prisoners referrals to outside specialists for evaluation of injuries, under the collegial review process or in circumstances similar to his case. Plaintiff himself was denied a referral three times before it was approved as the result of an appeal. This track record is not sufficient to create a genuine issue of material fact as to whether Wexford engaged in a widespread practice of such denials. *See Howell*, 987 F.3d at 655-56 (citing *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008)).

Plaintiff suggests the possibility of repeated deliberate indifference in his own case, where Dr. Shah's first request for an ENT referral was initially denied by Dr. Ritz on August 3, 2015 upon collegial review; his second referral request/appeal was denied on August 28, 2015, by Dr.

12

Ritz and Dr. Lehman; and Dr. Ritz again denied the referral during collegial review on August 31, 2015. (Doc. 114-2, pp. 5-6; Doc. 114-3, pp. 27, 29-31). The referral was only approved on September 2, 2015, by Dr. Shicker after Dr. Shah appealed again. (Doc. 114-2, p. 6; Doc. 114-3, p. 37). Plaintiff has not advanced a claim that Dr. Ritz and/or Dr. Lehman were deliberately indifferent to his condition when they denied the ENT referral. Even if they were, however, imputing deliberate indifference by one or both of these actors to Wexford would amount to *respondeat superior* liability, which is not the standard under *Monell*. Indeed, Wexford's UM policy/procedure, which allows for appeals when treatment is denied on collegial review, ultimately resulted in the approval of Plaintiff's ENT referral. It is unfortunate that the timing of that approval, combined with a staffing delay in seeking an appointment and the unavailability of providers before Plaintiff's release from custody, meant that Plaintiff did not get the ENT appointment while he was still in prison.

Plaintiff's argument that an ENT referral was medically necessary within the six weeks following his injury, and that the denial of that referral fell outside the bounds of reasonable medical judgment, does present a factual question. (Doc. 126, pp. 4-5). However, that question does not amount to a genuine issue of material fact regarding whether Wexford engaged in a widespread practice or custom of denying medically necessary referrals. Moreover, the Eighth Amendment only requires "reasonable measures to meet a substantial risk of serious harm" and does not give prisoners entitlement to "demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A difference of opinion between medical professionals concerning an inmate's treatment does not establish deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001).

In a similar vein, Plaintiff argues that summary judgment should be denied because a

question of fact exists on whether Wexford's actual practice of applying its policies failed to meet its own standards set forth in those policies and procedures. (Doc. 126, pp. 11-12). Again, the evidence before the Court is limited to whether Dr. Ritz and/or Dr. Lehman misapplied Wexford's policies in denying Plaintiff an ENT referral. Not only are these individuals not named as Defendants, but a showing that they failed to meet Wexford's standards would not amount to evidence of a widespread practice of violating prisoners' constitutional rights. Plaintiff therefore fails to show that a genuine issue of material fact exists on the key question for *Monell* liability – whether Wexford maintained a widespread custom or practice of denying referrals that amounted to a corporate policy.

Finally, Wexford has shown that Dr. Ritz, who denied Plaintiff's ENT referral, does not qualify as a "person with final policymaking authority" whose actions would bind Wexford under *Monell*. The facts demonstrate that Dr. Ritz (and Dr. Lehman) did not make the final decision on the referral, and their denials were ultimately overruled by Dr. Schicker. (Doc. 114, p. 18). Plaintiff has not set forth any evidence to the contrary, and has not shown that a Wexford policy, custom, or widespread practice was a "moving force" behind the alleged deliberate indifference.

To summarize, the evidence presented to date regarding Wexford's alleged deliberate indifference is not sufficient under the *Monell* standard to allow a reasonable jury to return a verdict for Plaintiff. Accordingly, the Court finds that Defendant Wexford is entitled to summary judgment on the merits.

## DISPOSITION

**IT IS HEREBY ORDERED** that Defendant's Second Motion for Summary Judgment on the Merits (Doc. 113) is **GRANTED**.

The Clerk is **DIRECTED** to substitute the correct name of Defendant, "Wexford Health

Sources, Inc.," to replace the incorrect designation of "Wexford Medical" in CM/ECF.

**COUNT 1** against **WEXFORD HEALTH SERVICES, INC**., and this entire action are **DISMISSED with prejudice**.  Any other pending motions are **DENIED** as **MOOT**.

The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**.

**DATED: 3/18/2021**                                s/J. Phil Gilbert
                                                                **J. PHIL GILBERT**
                                                                **United States District Judge**